IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01077-CBS-PAC

STEPHEN JEROME GRACE,
        Plaintiff,

v.

DEPUTY SHERIFF APODACA,
DEPUTY SHERIFF JASON HUBER,
NURSE LPN LISA [sic],
NURSE ASSISTANCE [sic] D.A.,
DR. CRUMB [sic],
        Defendants.

_____
___

MEMORANDUM OPINION AND ORDER

_____
___

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendant Apodaca's Motion to

Dismiss (filed September 27, 2004) (doc. # 22); (2) Defendant Huber's Motion to

Dismiss (filed December 27, 2004) (doc. # 40); (3) Defendant Crum's Motion for

Summary Judgment (filed March 1, 2005) (doc. # 49); and (4) Grace's "Dispositive

Motion" (filed April 25, 2005) (doc. # 66).  On May 24, 2005, this case was referred to

the Magistrate Judge to handle all dispositive matters including trial and entry of a

final judgment in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73, and D.C.

COLO. LCivR 72.2.  (*See* doc. # 68).  The court has considered the pending motions,

Grace's Response to Apodaca's motion (filed October 8, 2004) (doc. # 26), Grace's

1

Response to Huber's motion (filed January 18, 2005) (doc. # 45), Crum's Supplement

(filed March 4, 2005) (doc. # 52), Grace's Response (filed April 14, 2005) (doc. # 65),

Crum's Reply (filed June 13, 2005) (no docket #), the statements of defense counsel

and Grace at the hearing held July 7, 2005, Grace's "Motion of Objection to

Defendant's Summary Judgment" ("Supplemental Response") (filed July 14, 2005)

(doc. # 79), Crum's Supplemental Reply (filed July 21, 1005) (doc. # 81), the exhibits,

the entire case file, and the applicable law and is sufficiently advised in the premises.


I.       Statement of the Case

Grace is an inmate proceeding *pro se*.  Grace was temporarily detained at the

Denver County Jail and is now serving a sentence at the Limon Correctional Facility

("LCF") in Limon, Colorado.  Grace alleges pursuant to 42 U.S.C. § 1983 that

Defendants violated his constitutional rights when they denied him adequate medical

care for a spider bite while he was incarcerated at the Denver County Jail in February

2004.  (Amended Complaint ("AC") at p. 3).  Grace brings three claims.  (*See* AC at pp.

4-6).  Claim One is against Dr. Crum, "Nurse LPN Lisa," and "Nurse Assistance D.A.

[sic]."  (*See* AC at p. 4).  Claim Two is against Deputy Sheriffs Apodaca and Huber.

(*See* AC at p. 5).  Claim Three is against the "medical staff" of Denver County Jail,

including Dr. Crum.  (*See* AC at p. 6).

Grace alleges that when he awoke in his cell on February 7, 2004, his face was

swollen and painful due to the bite of a brown recluse spider.  (AC at p. 3).  Grace

2

went to the officers' cage to show Huber his swollen face. (AC at p. 3). Huber told Grace that there was nothing he could do for him and that Grace could go to breakfast or return to his cell. (AC at p. 3). Grace returned to his cell because he was in pain. (AC at p. 3). On February 8, 2005, Grace again went to the officers' cage to explain that he was in pain. (AC at p. 3). Apodaca also told Grace that there was nothing he could do for him and that Grace could go to breakfast or return to his cell. (AC at p. 3). Grace alleges that neither Huber nor Apodaca notified the medical department about his condition. (AC at p. 3). In the evening, Grace spoke to a nurse who told him to submit a kite. On February 9, 2005, "Nurse LPN Lisa" examined Grace and provided him Benadryl. (AC at p. 3, continued). On February 11, 2005, a nurse assistant with the initials "D.A." examined Grace. (AC at p. 3, continued). He declined Grace's requests to "lance" the "pocket" in his nose and to send him to Denver Health. (AC at p. 3, continued).

On February 13, 2005, Grace spoke to a nurse who took him to see Dr. Crum. (AC at p. 3, continued). Dr. Crum prescribed an antibiotic. (AC at p. 3, continued). Dr. Crum declined Grace's requests to "lance" the "poison pocket" in his nose and to refer him to a specialist at Denver Health. (AC at p. 3, continued). Grace saw Dr. Crum again ten days later. (AC at p. 3, continued). At that time, Dr. Crum referred Grace to a specialist at Denver Health, where Grace was tested and treated. (AC at p. 3, continued). Grace alleges that Dr. Crum acted with deliberate indifference to his serious medical needs by refusing to do a full examination on February 13, 2004 and

waiting ten additional days before referring Grace to Denver Health.  (*See* AC at pp. 4, 6).

II.     Defendants Apodaca and Huber

Defendants Apodaca and Huber have moved for dismissal of the AC pursuant to Fed. R. Civ. P. 12(b)(6) based on Grace's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).

Prior to filing this civil action, Grace was required to exhaust administrative remedies pursuant to the PLRA.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Section 1997e(a) provides:

> "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Grace was required to exhaust his administrative remedies prior to bringing this action "regardless of the relief offered through administrative procedures." *Booth*, 532 U.S. at 741.  *See also Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1167 (10th Cir. 2003) ("Even though matters involving federal and state law and regulation were ‹non-grievable' under prison policy, the fact that prison authorities did have the power to render some of the relief requested by plaintiffs puts this case squarely within the ambit of *Booth*."), *cert. denied,* 540 U.S. 1118 (2004).

"To ensure compliance with the statute, a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity."  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir. 2003), *cert. denied*, 125 S. Ct. 344 (2004).  *See also Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cri. 2000) ("a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome").

Section 1997e(a) "imposes a pleading requirement on the prisoner." *Steele*, 355 F.3d at 1210.  *See also Simmat v. U.S. Bureau of Prisons*, ___ F.3d ___, 2005 WL 1541070 at * 10 (10th Cir. (Kan.) July 1, 2005) ("Exhaustion is a pleading requirement rather than an affirmative defense") (citation omitted).  "A complaint that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." *Steele*, 355 F.3d at 1210 (internal quotation marks and citation omitted).  *See also Simmat*, 2005 WL 1541070 at * 10 ("failure to adequately plead exhaustion therefore amounts to a failure to state a claim upon which relief can be granted") (citation omitted).  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." *Steele*, 355 F.3d at 1211 (internal quotation marks and citation omitted).

The Denver County Jail had specific administrative procedures for inmate grievances while Grace was incarcerated there.  The Denver County Jail Inmate Handbook ("Inmate Handbook") contains a specific grievance and appeal procedure that must be followed whenever an inmate believes he or she has been aggrieved. The Inmate Handbook informs inmates "[s]hould you feel personally aggrieved about any matter, the following steps are to be followed when seeking relief." (*See* Inmate Handbook, Exhibit A to Apodaca's and Huber's Motions to Dismiss).  The Inmate Handbook explains a specific, separate procedure for medical grievances.  (*See id.*). Pursuant to Step 1 of the Medical Grievance procedure, an aggrieved inmate must first make a complaint in writing (a kite) to the Nurse. (*See id.*).  If the inmate does not receive a satisfactory response, then pursuant to Step 2 the inmate must send a kite to the Nursing Supervisor/Medical Coordinator. (*See id.*).

On January 24, 2005, prior to the date that this case was referred to this Magistrate Judge to handle all dispositive matters including trial and entry of a final judgment, Magistrate Judge Coan issued a Recommendation that Grace's claims against Apodaca and Huber be dismissed without prejudice for failure to exhaust administrative remedies. (*See* Recommendation of United States Magistrate Judge (filed June 24, 2005) (doc. # 46)).  In his Objection to the Recommendation, Grace did not address the issue of exhaustion. (*See* Grace's Objection (filed February 10, 2005) (doc. # 48)).

At the hearing held July 7, 2005, Grace argued that he has exhausted his

administrative remedies as to his claims against Apodaca and Huber. However, the
only information that Grace has provided to the court to demonstrate exhaustion of his
claims is a copy of a grievance dated February 7, 2004 wherein Grace complains
about his treatment by the medical staff and does not mention either Apodaca or
Huber. (*See* Exhibits 7 and 9 to Grace's Supplemental Response (filed July 14, 2005)
(doc. # 79); attachment to Grace's Response to Defendant's Motion to Dismiss (filed
January 18, 2005 (doc. # 45) (same as Exhibit 7)). Grace has not sufficiently alleged
or demonstrated that he exhausted his administrative remedies as to Claim Two
against Apodaca and Huber. Accordingly, Claim Two is properly dismissed without
prejudice.[1]

III.   Defendant Crum

For several reasons, Crum has moved for summary judgment on Grace's
claims against him (Claims One and Three). Summary judgment is appropriate "if
the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c).

> [F]amiliar Rule 56 principles impose on defendants as movants the
> initial burden of establishing the lack of a genuine issue of material fact.
> If that burden is met, plaintiffs as nonmovants must then come forward
> with specific facts showing that there is a genuine issue for trial. On that
> score an issue is genuine if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. [The district court is] required to examine all of the evidence and draw all reasonable inferences in favor of plaintiffs as nonmovants.

*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.) (internal quotes and citations omitted), *cert. denied,* 537 U.S. 816 (2002).

The court must construe Grace's Amended Complaint and other papers liberally because he is representing himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972);  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the court may not be Grace's advocate.  *See Hall*, 935 F.2d at 1110.  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Because the AC has been sworn to under penalty of perjury (*see* AC at p. 8), the court may treat it as an affidavit.  *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997).  *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)").  "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein."  *Conaway*, 853 F.2d at 792.

8

As the nonmovant responding to a summary judgment motion, Grace is required to identify specific facts, through affidavits, depositions, or exhibits, from which a rational trier of fact could find in his favor. *See Adler*, 144 F.3d at 671. Although the court must "view the evidence and draw all inferences in the light most favorable to the party opposing summary judgment, that party 'must identify sufficient evidence which would require submission of the case to a jury.'" *Langley v. Adams County*, 987 F.2d 1473, 1476 (10th Cir.1993) (quoting *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir.1992)). Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient. *White v. York International Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (internal quote and citation omitted). *See also Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir.1990) (where the court treats a verified complaint as an affidavit, "conclusory allegations without specific supporting facts have no probative value") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93. An affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990). The court must determine whether Grace has met his burden of presenting specific facts to overcome Crum's Motion.

9

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976) (internal quotation marks and citations omitted)). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, a plaintiff must demonstrate that he suffered objectively serious medical needs and that the prison officials actually knew of and deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citation omitted). The standard encompasses two components: objectively, the medical needs must be sufficiently serious, and subjectively, the actors involved must have acted in a deliberately indifferent manner. *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir.1991) (citation omitted).

Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the

violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. The Supreme

Court has explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate
> indifference. We hold instead that a prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an excessive risk to
> inmate health or safety; the official must both be aware of facts from which the
> inference could be drawn that a substantial risk of serious harm exists, and he
> must also draw the inference. This approach comports best with the text of the
> Amendment as our cases have interpreted it.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Barrie v. Grand County, Utah*,

119 F.3d 862, 869 (10th Cir. 1997) ("an official or municipality acts with deliberate

indifference if its conduct . . . disregards a known or obvious risk that is very likely to

result in the violation of a prisoner's constitutional rights"); *Green v. Branson*, 108

F.3d 1296, 1302 (10th Cir. 1997) ("To be guilty of deliberate indifference, the

defendant must know he is creating a substantial risk of bodily harm") (internal

quotation marks and citation omitted).

The evidence before the court chronicles the medical care and treatment Grace

received at the Denver County Jail in February 2004. On February 11, 2004, Grace

filled out an Inmate Request for Medical Assistance, complaining that "something bit

me on the nose." (*See* Exhibit B-1; Exhibit A at ¶ 4). The same day, nurse L. Miller

treated Grace, prescribed 25 milligrams of Benadryl, and ordered follow-up if there

were no improvement. (*See* Exhibit B-1; Exhibit A at ¶ 4). On February 12, 2004,

Grace was seen by nurse Curtis and Dr. Crum for localized redness and swelling of

his nose.  (*See* Exhibits B-1, B-2; Exhibit A at ¶ 5).  Dr. Crum prescribed Keflex, an oral

antibiotic, and Bacitracin, a topical antibiotic, and ordered a follow-up exam in two

days.  (*See* Exhibit A at ¶¶ 5, 13; Exhibit B-1).

On February 14, 2004, a nurse checked Grace's nose and noted that it

remained swollen with no apparent drainage.  (*See* Exhibit B-2; Exhibit A at ¶ 6).  The

nurse ordered continued monitoring.  (*See id.*).  On February 15, 2004, a nurse again

checked Grace's nose and noted that it was more swollen than the previous day, with

associated pressure and pain but no drainage.  (*See* Exhibit B-2; Exhibit A at ¶ 7).  On

February 16, 2004, Dr. Crum observed that the condition of Grace's nose had not

improved and referred Grace for an appointment with an ENT (ear, nose and throat)

physician as soon as possible.  (*See* Exhibit A at ¶¶ 8, 13; Exhibit B-1).  On February

17, 2004, a nurse noted Grace's referral to an ENT and that the turn-around time for

an appointment with an ENT was 7 days.  (*See* Exhibit B-4; Exhibit A at ¶ 10).  On

February 18, 2004, Dr. O'Brien-Falls of the Denver County Jail requested that Grace's

appointment with an ENT be expedited.  (*See* Exhibit B-4; Exhibit A at ¶ 11).

On February 25, 2004, an ENT physician evaluated Grace at Denver Health

Medical Center ("Denver Health") and Grace was admitted for a small abscess in his

right nostril.  (*See* Exhibits A at ¶ 12; C-1, C-2).  Grace reported that he had "self-

incised and drained (I & D) this area through the top of the nose with a staple" on or

about February 20, 2004.  (*See* Exhibits C-1, C-2; Exhibit 10 to Grace's Supplemental

Response).  Grace was treated at Denver Health with antibiotics and drainage of the

abscess. (*See* Exhibit A at ¶ 12; Exhibits C-1 through C-3). Grace was discharged from Denver Health on February 28, 2004 with a final diagnosis of right vestibular phlegmon, which is equivalent to an abscess. (*See* Exhibit A at ¶ 12; Exhibit C-3; Exhibit 10 to Grace's Supplemental Response). Upon further examination on March 17, 2004 at Denver Health, Grace's condition had resolved. (*See* Exhibit A at ¶ 12; Exhibit C-4). Grace was no longer incarcerated at the Denver County Jail after March 5, 2005. (*See* Exhibit A at ¶ 12).

Grace challenges Exhibit B-1 as containing "forged" information. (*See* Grace's Supplemental Response at p. 3 ¶¶ 3, 4, 8). Grace offers only his conclusory allegation  but no evidence to support his assertion that information in his medical records was forged. Evidence in the record demonstrates that the writing at the bottom of Exhibit B-1 dated February 16, 2004 is Dr. Crum's. (Exhibit A at ¶ 8). Grace concedes that on or about February 16, 2004, Dr. Crum examined him and "decided I had better go to the ENT." (Grace's Supplemental Response at p. 3 ¶ 10).

Grace argues, without evidentiary support, that he was not prescribed Keflex or any other antibiotic on February 12, 2004. Grace's own allegations state that Dr. Crum prescribed him antibiotics. (AC at p. 3, continued, lines 22-23). Grace's conclusory arguments are insufficient to refute the evidence that Dr. Crum issued a verbal order on February 12, 2004 prescribing Keflex to Grace. (*See* Exhibit A at ¶¶ 5, 13; Exhibit B-1). While Grace further asserts that he was examined on February 13, 2004, not February 12, 2004, there is evidence before the court indicating that he was

examined on February 12, 2004.  (*See* Exhibits B-1, B-2; Exhibit A at ¶ 5).  Grace has

not contested Exhibit B-2, which also reflects that he was seen by medical personnel

on February 12, 2004.

Even if the court were to accept Grace's arguments that Exhibit B-1 contains

"forged" information and that he saw medical personnel on February 13, 2004, not

February 12, 2004, Grace has not demonstrated that Dr. Crum was deliberately

indifferent to his serious medical needs.  The evidence demonstrates that while

Grace was incarcerated at the Denver County jail, his requests for medical attention

were promptly addressed and he was treated by medical personnel on at least four

occasions between February 11, 2004 and February 25, 2004.  (*See* Exhibits A, B-1

through B-4).  At no time did Grace's condition present an emergency.  (*See* Exhibit A

at ¶ 13).  Dr. Crum treated Grace's symptoms and condition, prescribing an oral

antihistamine, an oral antibiotic, and a topical antibiotic.  On February 25, 2004, Grace

was transported to Denver Health for examination by an ENT physician.  The ENT

physician's diagnosis and treatment of Grace was consistent with the diagnosis and

treatment he received at the Denver County Jail.

Grace's allegations and evidence amount to no more than his disagreement

with the treatment provided by Dr. Crum.  In Grace's opinion, his condition was

misdiagnosed and "antivenin" was the proper course of treatment, rather than the

advice and treatment (including observation and medication) that he was provided.

(*See* Grace's Supplemental Response at p. 2 ¶ 8).  Other than Grace's personal

14

opinion, there is no evidence in the record that he was bitten by a brown recluse spider.  The evidence indicates that based on his clinical presentation, it is highly unlikely that he was bitten by a brown recluse.  (*See* Exhibit A at ¶ 13; Exhibits C-1, C-2).  As a layperson untrained in medicine, Grace is not competent to proclaim the appropriate treatment for a spider bite or a nasal abscess or to contradict the medical evidence in the record.  Whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation).  *See also Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs");  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment");  *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (the Constitution does not guarantee a prisoner the treatment of his choice) (citations omitted);  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to treatment of prisoner did not establish constitutional violation);  *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation);  *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) ("The prisoner's right is to medical care -- not to the type or scope of medical care which he

15

personally desires.") (internal quotation marks and citation omitted).  Grace's disagreement with his medical treatment is not a permissible basis  for relief pursuant to § 1983.

Grace's allegations about the diagnosis and treatment he received from Dr. Crum do not rise beyond allegations of mere negligence.  "'[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'"  *Green*, 108 F.3d at 1304 (citing *Estelle*, 429 U.S. at 106).  At best, Grace's claims against Crum amount to no more than claims of medical negligence that do not provide a proper basis for relief pursuant to § 1983.

Grace alleges that he did not receive proper medical care and treatment until he was admitted to Denver Health and that Dr. Crum was deliberately indifferent to his serious medical needs by failing to refer him sooner to the ENT physician at Denver Health.  (*See* Grace's Supplemental Response at p. 2 ¶¶ 12, 16; Grace statements at hearing held July 7, 2005).  Delay in providing medical care to a prisoner constitutes an Eighth Amendment violation only if it results in substantial harm.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citing *Olson*, 9 F.3d at 1477).  The evidence indicates that Grace's treatment at Denver Health was successful and Grace suffered no harm from any delay in receiving that treatment.  While Grace alleges he suffered damage to the "carteledges in the right side of his nose" (AC at p. 5), there is no evidence before the court that Grace suffered any complications or

damages as a result of his nasal abscess. Postponing treatment for an extended period, even until the prisoner's release from prison, does not provide a cause of action for deliberate indifference to serious medical needs if the delay would not cause further damage. *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). *See also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Delays in providing medical care that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems.").

In sum, the evidence before the court does not demonstrate that Dr. Crum was deliberately indifferent to Grace's serious medical needs in violation of the Eighth Amendment.

IV.    Defendants "Nurse LPN Lisa" and Nurse Assistance D.A. [sic]"

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action. This civil action was initially filed on May 27, 2004 and the Amended Complaint was filed on June 10, 2004. More than 120 days has passed since the filing of this civil action and Defendants "Nurse LPN Lisa" and Nurse Assistance D.A." have never been served with this civil action.

Grace is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. As an incarcerated *pro se* plaintiff proceeding *in forma pauperis* and pursuant to the August

17

27, 2004 Order Granting Service by United States Marshal (doc. # 13), Grace is

entitled to rely on the U.S. Marshal for service of the summons and complaint.  There

is no indication that the U.S. Marshal or the court clerk have failed to perform their

duties to serve Defendants "Nurse LPN Lisa" and Nurse Assistance D.A."

Upon attempted service at the location provided by Grace, the U.S. Marshal and

the court clerk were unable to serve "Nurse LPN Lisa." (*See* Process Receipt and

Return dated September 2, 2004 ("no longer employed" at Denver County Jail) (doc. #

14)).  At the Scheduling Conference held October 28, 2004, Grace advised the court

that "Nurse LPN Lisa" is Lisa Miller and that he did not know where she is.  (*See* doc.

# 29).  On November 1, 2004, the court ordered Grace and defense counsel to provide

further information regrading the identities and locations of Defendants "Nurse LPN

Lisa" and "Nurse Assistance D.A." (*See* doc. # 29).  On November 12, 2004, defense

counsel informed the court that Lisa Miller may now be known by her married name,

Lisa Wirth, and provided her last known home address to the court **under seal** (doc. #

32).  On December 1, 2004, the court directed the U.S. Marshal to personally serve a

copy of the amended complaint on Lisa Miller and to file the return of service under

seal.  (*See* Order Directing Service of Summons and Complaint (doc. # 36)).  On four

occasions on December 12, 2004, December 13, 2004, December 19, 2004, and

January 13, 2004, the U.S. Marshal attempted without success to serve Lisa

Miller/Wirth at her last known address.  On January 13, 2005, the U.S. Marshal was

advised that Lisa Miller/Wirth had moved from that address on or about September

30, 2004 and left no forwarding address. (*See* Process Receipt and Return dated

January 13, 2005 **under seal** (doc. # 44)).

Defense counsel has not located any nurse working at the Denver County Jail

with the initials "D.A." (*See* Notification filed November 12, 2004 **under seal**).  On

January 24, 2005, Judge Coan ordered Grace to provide further identifying information

for "D.A." on or before February 25, 2005 or the court would recommend dismissal of

that Defendant.  Grace concedes that he cannot provide the identity of "Nurse

Assistance D.A." or addresses at which either "Nurse LPN Lisa" or "Nurse Assistance

D.A." may be served.  (Statements of Grace at hearing held July 7, 2005).  The court

will not require defense counsel, the U.S. Marshal or the court clerk to conduct a

further search for these Defendants.

Grace now asks the court to allow him to amend his complaint to name as

Defendants "Medical Staff Jane and John Doe of the Denver County Jail."  (Grace's

Supplemental Response at p. 1 ¶ 2).  There is no provision in the Federal Rules of

Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson*

*v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984);  *Coe v. U.S. Dist. Court for*

*Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982).  To the contrary, the Federal

Rules provide:

> "[e]very pleading shall contain a caption setting forth the name of the
> court, the title of the action, the file number, and a designation as in Rule
> 7(a).  In the complaint, the title of the action shall include the names of
> all the parties . . . ."

Fed. R. Civ. P. 10(a).  Because anonymous parties are not permitted by the Federal Rules, Grace's request to name John and Jane Doe Defendants is properly denied.

For these reasons, Defendants "Nurse LPN Lisa" and "Nurse Assistance D.A." are properly dismissed from this civil action.

Accordingly, IT IS ORDERED that:

1. Defendant Apodaca's Motion to Dismiss (filed September 27, 2004) (doc. # 22) is GRANTED.  Defendant Apodaca is hereby dismissed without prejudice from this civil action.

2. Defendant Huber's Motion to Dismiss (filed December 27, 2004) (doc. # 40) is GRANTED.  Defendant Huber is hereby dismissed without prejudice from this civil action.

3. Claim Two of the Amended Prisoner Complaint, which names only Defendants Apodaca and Huber, is hereby dismissed without prejudice.

4. Defendant Crum's Motion for Summary Judgment (filed March 1, 2005) (doc. # 49) is GRANTED.  Judgment on Claims One and Three of the Amended Prisoner Complaint (doc. # 5) shall enter in favor of Defendant Crum and against Plaintiff.

5. Defendants "Nurse LPN Lisa" and Nurse Assistance D.A. [sic]" are hereby dismissed from this civil action.

6. Grace's "Dispositive Motion" (filed April 25, 2005) (doc. # 66) is DENIED.

7.      No claims or parties remaining, this civil action is terminated.

8.      Each party shall bear his, her, or its own fees and costs associated with

this civil action.

DATED at Denver, Colorado, this   28th   day of July, 2005.

BY THE COURT:


  /s/  Craig  B.  Shaffer  
Craig B. Shaffer
United States Magistrate Judge

---

1.      "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). *See also Steele*, 355 F.3d at 1213 ("[a] dismissal based on lack of exhaustion, . . . should ordinarily be without prejudice").